```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

NEW YORK LIFE INSURANCE COMPANY,

                Plaintiff,                 13 Civ. 2384

     -against-                             OPINION

JOHANNE LIONEL ALEANDRE and KIMBERLY
LIONEL,

                Defendants.

------------------------------------X


A P P E A R A N C E S:



        Attorney for the Defendant Johanne Lionel Aleandre

        LAW OFFICES OF ERIC DINNOCENZO
        641 Lexington Avenue
        New York, NY 10022
        By:  Eric Dinnocenzo, Esq.



        Attorney for Plaintiff

        WHITE AND WILLIAMS LLP
        One Penn Plaza, 41st Floor, Suite 4110
        New York, NY 10119
        By:  Andrew Hamelsky, Esq.
```



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-2-14

**Sweet, D.J.**

Plaintiff New York Life Insurance Company ("NY Life") seeks interpleader pursuant to Rule 22, to deposit the funds of the life insurance policies of Defendant Johanne Lionel Aleandre ("Aleandre") with the Court's registry pursuant to Fed. R. Civ. P. 67, and for attorneys' fees and costs. Defendant Aleandre cross moves for default judgment against Defendant Kimberly Lionel ("Kimberly"), and for NY Life to be ordered to pay amounts due and owing directly to Defendant Aleandre.

Upon the facts and conclusions set forth below, Plaintiff's motion is granted in part and denied in part, and Defendant Aleandre's motion is denied.

**Facts & Procedural History**

Marie D. Lionel (the "Insured") was issued a Life Insurance Policy on November 26, 2001 ("Policy 1"). (Compl. Ex. 1.) The Insured was also issued a second Life Insurance Policy which became effective on September 23, 2008 ("Policy 2"). (Compl. Ex. 2.) Both policies have a face amount value of $50,000.00, and the benefit amount payable upon the Insured's

1

death under each policy was $50,000.00. The Insured identified the beneficiaries to both policies as her daughter, Kimberly, and her sister, Aleandre, with each receiving fifty percent. (Compl. Exs. 3-4.)

Policy 1 contains the following pertinent provision under § 2.4:

> **Beneficiary** The beneficiary for any life insurance proceeds is the person or entity named in the application, or in a notice you sign that gives us the information we need. If more than one beneficiary is named, they can be classified as first, second, and so on. If two or more are named in a class, their share in the proceeds is equal, unless you state otherwise. The stated shares will be paid to any first beneficiaries who survive the Insured. If no first beneficiaries survive, payment will be made to any beneficiary surviving in the second class, and so on.

(Compl. Ex. 1.)

Policy 2 contains the following pertinent provision:

> **Naming of Beneficiary** The stated shares of the proceeds will be paid to any first beneficiaries who survive the Insured. If no first beneficiaries survive, payment will be made to any beneficiary surviving in the second class, and so on. Beneficiaries who survive in the same class have an equal share in the proceeds, unless the shares are stated otherwise.

(Compl. Ex. 2.)

2

The Insured died on August 17, 2011. NY Life learned that the Insured had suffered a gunshot wound to her torso while visiting Florida. (Compl. Ex. 5.) Following the Insured's death, Aleandre submitted a claim for the death benefits under the life insurance policies. (Compl. Ex. 6.)

Because NY Life had received information that the Insured's death was the result of a homicide, NY Life further investigated the death of the Insured prior to paying the disability benefits. As part of this litigation, John Murray ("Murray"), a Senior Representative in the Claims Administration Unit of the Service Department of NY Life, investigated the homicide of the Insured. *See* Affidavit of John Murray ("Murray Aff."). Murray attests that he contacted authorities on behalf of NY Life beginning in November 2011 to ascertain whether the beneficiaries could be ruled out as suspects in the homicide of the Insured. *See id.* At first, Murray was informed by the Orange County Sheriff's Department that no one had been ruled out as suspects. *See id.* Thereafter, on October 25, 2013, Murray learned that Kimberly was no longer considered a suspect, but that Aleandre was considered to be involved and was refusing to cooperate with the criminal investigation. *See id.* Murray

3

was also repeatedly informed that the criminal investigation remained open and active.  *Id.*

In addition, Ken Smith, also a Senior Representative in the Claims Administration Unit of the Service Department of NY Life, attested to the fact that he contacted the Orange County Sheriff's Department numerous times to ascertan whether the beneficiaries had any involvement in the death of the Insured.  *See* Affidavit of Ken Smith ("Smith Aff.").  On February 27, 2013, Smith contacted Detective Pelton of the Orange County Sheriff's Department and was advised that Aleandre had not been ruled out as a suspect.

By letter dated October 10, 2013, Jerry L. Demings of the Orange County Sheriff's Department advised NY Life that there is an ongoing investigation into the homicide of the Insured, and that suspects are currently being developed.  *See* Jerry L. Demings Letter ("Demings Let.").  As a result of this information, taken together, NY Life informed Aleandre that it was currently unable to pay her the death benefits while the investigation was ongoing.  Aleandre continued to demand payment.  Thereafter, NY Life commenced the instant action pursuant to the Federal Interpleader Act, 28 U.S.C. Fed. R. Civ. P. 22.  Aleandre interposed an Answer to the First Amended

4

Complaint with Conterclaim and Cross-Claim, alleging that NY Life acted wrongfully and unreasonably by refusing to pay her the death benefits.  See Lionel Answer.

To date, Defendant Kimberly has not interposed an Answer in this matter.  Kimberly was present at the Court hearing on the instant motion on December 11, 2013[1].  NY Life has agreed to pay Kimberly her share of the death benefits in the amount of $50,000.00.  NY Life maintains that they are currently in the process of issuing benefit checks to Kimberly.

On November 12, 2013, Plaintiff filed the instant motion seeking an order: (1) declaring and adjudicating that NY Life's payment of $50,000.00 to the Court's Registry will be in total satisfaction of both life insurance policies and will discharge and absolve NY Life from any further liability to each of the parties hereto; (2) releasing and discharging NY Life from and against any and all liability relating to the Insured's policies; (3) permanently restraining and enjoining the parties hereto from instituting and/or prosecuting any other suit here or elsewhere; and (4) awarding NY Life attorneys' fees, costs of suit and such other and further relief as the Court deems proper.  In turn, on November 26, 2013, Defendant Aleandre

---

[1] As a result of Kimberly's appearance, Defendant Aleandre's request for default against Kimberly is no longer appropriate.

cross-moved for a default judgment against Kimberly and for the Court to order NY Life to directly pay Aleandre the death benefits of the Insured.

**Applicable Standard**

1. Rule 22

Under Rule 22, interpleader is proper if the party requesting it "is or may be exposed to double or multiple liability." Fed. R. Civ. P. 22(1). Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund. *See generally Texas v. Florida,* 306 U.S. 398, 406-08 (1939); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* §§ 1702, 1704, at 493-97, 500-03 (2d ed. 1986) [hereinafter Wright & Miller]. Accordingly, what triggers interpleader is "a real and reasonable fear of double liability or vexatious, conflicting claims . . . ." *Indianapolis Colts v. Mayor of Baltimore,* 741 F.2d 954, 957 (7th Cir. 1984) (collecting citations), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985).

2. <u>Rule 67</u>

"If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party-on notice to every other party and by leave of court-may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting a deposit." Fed. R. Civ. P. 67.

Under this rule, payments into the court are authorized notwithstanding the fact that there are adverse claims to the proceeds of the judgment. *See U.S. Overseas Airlines, Inc. v. Compania Aerea Viajes Expresos De Venezuela, S.A.*, 161 F. Supp. 513 (S.D.N.Y. 1958). In an interpleader action, payment of insurance policy funds to the Court may be appropriate to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund. *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 986 F.2d 677, 679 (2d Cir. 1993). This is true regardless of the merits of competing claims. *John v. Sotheby's, Inc.*, 141 F.R.D. 29 (S.D.N.Y. 1992).

## I. Interpleader is Appropriate and Plaintiff's Motion to Deposit The Death Benefits is Granted

Plaintiff seeks interpleader and to deposit the benefits of the Insured's policy relating to Aleandre in the Court's Registry.

An interpleader action is appropriate when a stakeholder "'legitimately fears multiple [liability] directed against a single fund,'" regardless of the merits of the competing claims. *Krishna v. Colgate Palmolive Co.,* No. 90 Civ. 4116, 1991 WL 125186 (S.D.N.Y. June 27, 1991) (quoting 7 Charles Wright, et al., Federal Practice & Procedure § 1704, at 501 (2d ed. 1986)). Here, Plaintiff faces the prospect of, and legitimately fears, double liability if the investigation into the Insured's homicide ultimately reveals Aleandre as the murderer. Under New York's "Slayer Statute," the rule is that "one cannot take property by inheritance or will from an ancestor or benefactor whom he has murdered." *Riggs v. Palmer*, 115 N.Y. 506 (1889). According to the Orange County Sherriff's Department, Defendant Aleandre is still being investigated in the murder of the Insured. Pursuant to New York's Slayer Statute, Aleandre would not be legally entitled to the proceeds of the life insurance policies if she were convicted of the murder of the Insured. *See In re* Gleason, 36 Misc.3d 486, 491

8

(Sup. Ct. Suffolk Cty. 2012). Even in cases where the policy beneficiary is merely a suspect or person of interest in the insured's murder, courts have determined that interpleader was appropriate in the case that the beneficiary is later found guilty. *See, e.g., State Farm Life and Assur. Co., Inc. v. Epps*, 2013 WL 3992754 (W.D.N.Y. 2013); *Metropolitan Life Ins. Co. v. Marini*, 1998 WL 704267 (S.D.N.Y. 1998). A beneficiary's disqualification thus does not depend upon criminal conviction. *See Doe v. American General life Ins. Co. of New York*, 139 Misc.2d 80 (Sup. Ct. Bronx Cty. 1998).

The same holds true where, as here, NY Life could be subject to multiple adverse claims if it gives the benefits to Aleandre and she is later convicted. Further, a two year delay since the homicide does not entitle Defendant to the funds, where NY Life has been told that Aleandre has not been ruled out and the investigation is ongoing. *See Metropolitan Life Ins. Co.*, 1998 WL 704267, at *1 (no bad faith or undue delay by insurance company since "only two years" had passed since the homicide).

Plaintiff also seeks permission to deposit the funds with the Court's Registry under Rule 67.

Unlike statutory interpleader, 28 U.S.C. § 1335, which requires a stakeholder to deposit the asset with the court, deposit of the asset is not a jurisdictional prerequisite for rule interpleader. *See National Union Fire Ins. Co. v. Ambassador Group, Inc.,* 691 F.Supp. 618, 621 (E.D.N.Y.1988); *Nationwide Mutual Ins. Co. v. Eckman,* 555 F.Supp. 775, 778 (D. Del. 1983); 3A James W. Moore, et al., Moore's Federal Practice ¶ 22.10 (2d ed. 1989). The Court, though, has discretion to permit such a deposit under Rule 67. *See Gulf States Util. Co. v. Alabama Power Co.,* 824 F.2d 1465, 1475 (5th Cir.), *modified on other grounds,* 831 F.2d 557 (5th Cir. 1987); *Bauer v. Uniroyal Tire Co.,* 630 F.2d 1287, 1290 n. 4 (8th Cir. 1980). "The purpose of Rule 67 is 'to relieve the depositor of responsibility for a fund in dispute,' such as in an interpleader action." *Gulf States,* 824 F.2d at 1474 (quoting *34 12 Charles Wright & Arthur Miller, Federal Practice & Procedure § 2991 (1973)); *see Prudential Ins. Co. of Am. v. BMC Indus.,* 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986). The rule applies only where a dispute exists concerning the funds or object. *See Baxter v. United Forest Prod. Co.,* 406 F.2d 1120, 1126 (8th Cir. 1969), *cert. denied,* 394 U.S. 1018 (1969); *Manufacturers Hanover Overseas Capital Corp. v. Southwire Co.,* 589 F.Supp. 214, 221 (S.D.N.Y. 1984).

Because there are potential competing claims to the funds at issue, exposing Plaintiff to liability should Plaintiff, as an innocent stakeholder, pay the claim of Defendant Aleandre and then later find out she is not entitled to such payment, deposit is appropriate.

With respect to fees, a federal district court "has discretion to award reasonable attorneys' fees and costs to a disinterested stakeholder in an action brought under the interpleader statute." *Guardian Life Ins. Co. of America v. St. Ange,* 2012 WL 463894, at * 2 (S.D.N.Y. Feb. 8, 2012) (citing *Septembertide Publishing, B.V. v. Stein and Day, Inc.,* 884 F.2d 675, 683 (2d Cir. 1989). In the instant case, given the limited nature of the litigation and the circumstances of all parties, attorneys' fees are not awarded. *See, e.g., Travelers Indemnity Co. v. Israel,* 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary costs of doing business of their insured by bringing an action for interpleader."); *Feehan v. Feehan,* 2011 WL 497852, at *7-8 (S.D.N.Y. Jan. 10, 2011) (declining to award attorneys' fees and costs where interpleader action was not complex, involved no unique problems, and insurer seeking interpleader provided no

11

unique services and failed to explain how any court submissions exceeded the ordinary cost of doing business), *adopted by* 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011).

**II.  Defendant Aleandre's Motion for Summary Judgment is Denied and Defendant Aleandre is Compelled to Submit Further Information as to her Right to the Policy to this Court**

Defendant bases her motion for summary judgment on the fact that there are no adverse claimants for death benefits as Kimberly has failed to respond or appear, and because the only evidence supporting that Aleandre is a suspect in the Insured's murder contains inadmissible hearsay and is inaccurate.  Because Kimberly has since appeared, Defendant's first argument is moot.

With respect to Defendant's second assertion, Aleandre cites a letter from the Sheriff's Office sent on November 1, 2013 to her attorney stating: "[W]e have not indicated that your client is a suspect or person of interest in this ongoing investigation.  Our practice is to neither confirm, nor deny, whether a person is a suspect in an open homicide investigation."  Defendant acknowledges that the Sheriff's Office released an October 10, 2013 letter that its office is "engaged in an ongoing investigation in the homicide of Marie

12

Lionel. Suspects are currently being developed." (Hamelsky Declaration, Ex. 2.)

While these two letters alone do not, as Aleandre contends, justify interpleader, Plaintiff has presented sworn affidavits that the Orange County Sheriff's Office confirmed that Aleandre had not been ruled out as a suspect, but that Kimberly had. This warrants interpleader action, as it exposes NY Life to potential multiple competing claims, and Aleandre's motion for summary judgment is therefore denied.

However, the parties seem to disagree as to the current status of the investigation into the Insured's Murder, and the stance of the Sheriff's Office as to Aleandre. As such, should Defendant Aleandre still wish to retain the proceeds of the Insured's policy, she is compelled to submit further briefing and support for her claim to this Court. *See State Farm Life and Assur. Co., Inc. v. Epps*, 2013 WL 3992754 (W.D.N.Y. 2013) (defendant compelled to litigate her right to proceeds in the court following deposit of the funds by the insurance company subject to Rules 22 and 67).

13

**Conclusion**

For the reasons set forth above, Plaintiff's motion is granted in part and denied in part: Plaintiff is (1) allowed to commence an interpleader action; (2) permitted to deposit the insurance policies' $50,000 death benefit proceeds with the court as relating to Aleandre; (3) discharged from any further liability under the policies to Defendants; and (4) Defendants are enjoined from commencing any further litigation against NY Life relating to the policies in this court or elsewhere. Plaintiff's motion for an award of attorneys' fees and costs is denied. Defendant Aleandre's motion for default and summary judgment is denied, and Aleandre is compelled to submit further support for her right to the death benefits to this Court.

It is so ordered.

**New York, NY**
**December** /6, **2013**

_____
ROBERT W. SWEET
U.S.D.J.